UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SOUTH BAY BOSTON MANAGEMENT INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITE HERE, LOCAL 26, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:08-cv-_____ |

### PLAINTIFF SOUTH BAY BOSTON MANAGEMENT INC.'S
### PETITION FOR DECLARATORY JUDGMENT

### COMPLAINT

1. South Bay Boston Management Inc. ("Plaintiff" or "South Bay") brings this action seeking declaratory judgment against defendant UNITE HERE, Local 26 ("Local 26").

### PARTIES

2. South Bay is the successor management company to Jiten Hotel Management Inc. ("Jiten") and currently operates the Courtyard by Marriott Hotel (the "Courtyard") located in South Boston, Massachusetts. South Bay Boston is an employer within the meaning of Section 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2)

3. Local 26 is a labor organization representing employees in industries affecting commerce within the meaning of Section 2(5) of the LMRA. Local 26 maintains its headquarters in Boston, Massachusetts.

## JURISDICTION

4.  This Court has jurisdiction pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, and pursuant to 28 U.S.C. § 1331 as the claims arise under the laws of the United States, namely, the National Labor Relations Act, 29 U.S.C. § 141, *et seq.* ("NLRA").

5.  Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

### *The Boston Redevelopment Authority Requires Jiten To Execute A Card-Check Agreement with Local 26.*

6.  In 2001, Jiten commenced the permitting process related to the development of the premises at the Courtyard. Prior to commencing this process, Jiten developed architectural plans and commissioned engineering studies and traffic studies in order to obtain approval from the Boston Redevelopment Authority (the "BRA") to build the Courtyard. See Declaration of Nayan Patel at ¶ 4 attached hereto as "Exhibit A."

7.  The BRA is the City of Boston's planning and economic development agency. The BRA is charged with serving as planning staff to both the Zoning Commission and the Board of Appeal. BRA staff members review all applications for variances, conditional use permits and zoning changes and make recommendations to the Zoning Commission and Board of Appeal. The BRA is also charged by Article 80 of the Boston Zoning Code to review the design of real estate developments and their effect on the surrounding community and the City as a whole. Accordingly, the BRA has the ultimate authority to decide which commercial real estate construction projects will be permitted to proceed in the City of Boston.

8.  In January 2002, Jiten submitted a letter of intent to the BRA which

commenced Large Project Review of the Jiten's Courtyard project under Article 80 of the Boston Zoning Code, which is one of the approval processes that must be completed prior to the issuance of any building permits related to the construction of the Courtyard. Ex. A at ¶ 6; see also Declaration of Beth Scherer at ¶ 4 attached hereto as "Exhibit B." In May 2002, Jiten submitted a Project Notification Form (the "PNF") to the BRA. Id. Notice of the filing of the PNF was duly published in the Boston Herald on May 20, 2002, initiating the public comment period with a closing date of June 19, 2002. Id. Pursuant to Section 80B-5.3 of the Boston Zoning Code, a scoping session was held on June 5, 2002 with the City of Boston's public agencies, at which point the Courtyard project was reviewed and discussed. Id. Jiten conducted a public meeting for the community's review and comment at the Holiday Inn Express, 69 R. Boston Street, Boston, MA (the "Holiday Inn Express") on June 19, 2002. Id. A Scoping Determination was issued by the BRA on August 21, 2002. Id. In March 2003, Jiten responded to the Scoping Determination by submitting a Draft Project Impact Report ("DPIR") to the BRA. Notice of the receipt of the DPIR was published in the Boston Herald on March 14, 2003, initiating the public comment period with a closing date of April 14, 2003. Id. Jiten conducted a public meeting for the community's review and comment on April 7, 2003 at the Holiday Inn Express. Id. Following the closing date of the post-DPIR public comment period, on April 14, 2003, Jiten requested approvals from the BRA Board for the issuance of a Preliminary Adequacy Determination ("PAD") waiving further BRA review pursuant to Article 80B, Section 80B-5.4(c) of the Code, and for the issuance of a Certification of Completion under Section 80B-5.4(c) of the Code. Id. However, Jiten's requests for a PAD and Certificate of Completion were not placed on the agenda for the

BRA Board meetings occurring after April 14, 2003. Id.

9. To determine why the BRA would not put the Courtyard project on the BRA Board's agenda, Jiten's Vice President Beth Scherer contacted the Mayor of the City of Brockton, Jack Yunitz, to arrange a meeting with the Mayor of Boston, Thomas Menino. See Ex. A at ¶ 7; Ex. B at ¶ 5.

10. Having still not been put on the BRA's agenda, in or around August 2003, Ms. Scherer met with Mayor Menino, Mayor Yunitz, Mayor Yunitz's wife and Mayor Menino's driver at the Holiday Inn in Brockton. See Ex. B at ¶ 6. During this meeting, Mayor Menino informed Ms. Scherer that in order to gain the BRA's approval for the Courtyard project, Jiten needed to meet with Janice Loux of Local 26 and enter into an agreement whereby Local 26 would be able to organize the Courtyard's employees without going through the normal process of a National Labor Relations Board secret-ballot election. Id.

11. A card-check agreement, also commonly referred to as a "neutrality agreement," replaces the typical union representational proceedings provided under the NLRA. The National Labor Relations Board ("NLRB") is the federal agency that administers the NLRA.

12. Pursuant to NLRB procedures, a union typically collects authorization cards from the group of employees it seeks to represent in order to make a showing of interest. If the NLRB determines that the union collected valid cards from at least thirty percent of the employees, it will schedule a secret ballot election. Prior to the election, both the employer and the union may conduct campaigns arguing for or against union representation. The election is then held

and if a majority of voting employees vote for the union, the union is certified by the NLRB as the representative of the employees.

13. Under a card-check agreement, the issue of union representation is determined solely by reviewing authorization cards collected by the union. The review of the authorization cards is usually conducted by an arbitrator. If the arbitrator determines that that the union collected authorization cards from a majority of employees, the employer is required to "voluntarily" recognize the union as the representative of its employees.

14. As a result of this meeting with Mayor Menino, Jiten's President Nayan Patel and Ms. Scherer had a meeting with Local 26 President, Janice Loux to negotiate a card-check agreement. See Ex. A at ¶ 8; Ex. B. at ¶ 7. A member of the Board of Directors of the BRA, Joseph Nigro, also attended this meeting. Id. Mr. Nigro instructed Mr. Patel and Ms. Scherer that if Jiten did not enter into a card-check agreement with the Union, the BRA would not grant Jiten the necessary approvals. Id.

15. Because Jiten had invested approximately $3,000,000.00 in the Courtyard project developing architectural plans and commissioning engineering and traffic studies necessary to submit a proposal to the BRA, Mr. Patel signed the Memorandum of Agreement (the "Agreement") on Jiten's behalf. See Ex. A at 9; see also Memorandum of Agreement dated August, 20, 2003 attached hereto as "Exhibit C."

16. Jiten would not have entered into the Agreement if the BRA had not insisted that Jiten sign the agreement as a requirement to obtain approval to obtain the permits to build the Courtyard. See Ex. A at 10.

17. The day after Jiten executed the card check agreement, on August 21,

2003, the BRA voted to issue a PAD and Certificate of Completion necessary to begin construction on the Courtyard. <u>See</u> Ex. A at ¶ 11; <u>see also</u> BRA Memorandum dated August 21, 2003 attached hereto as "Exhibit D."

### *The Card-Check Agreement*

18. As is the case with most card-check agreements, the Agreement at issue dictates a procedure under which Jiten could be required to voluntarily recognize the Union as the collective bargaining representative of the Courtyard's employees.

19. If the Union is recognized as the collective bargaining representative of the Courtyard's employees, the Agreement also contains a provision for binding interest arbitration if the parties cannot reach an initial collective bargaining agreement within 90 days of Local 26's recognition.

20. The Agreement has a finite three-year term measured from the date of the opening of the Courtyard. Specifically, the agreement provides:

> This Agreement shall be in full force and effect from the date it is fully executed . . . until three years from the full public opening of the hotel, or if sooner upon execution of a collective bargaining agreement or issuance of an interest arbitration award which concludes the collective bargaining agreement negotiations, either of which explicitly supercedes this document.
> ....

<u>See</u> Ex. C at ¶15.

### *Jiten Opens the Hotel and the Union Demands Recognition*

21. On May 18, 2005, Jiten opened the Courtyard to the public.

22. On July 1, 2005, South Bay became the successor management company to Jiten.

23. In July 2007, Local 26 began organizing the Courtyard's employees.

24. On October 19, 2007, Local 26 requested recognition as the exclusive

collective bargaining agent for the Courtyard's employees.

25. On April 21, 2008, Arbitrator Robert O'Brien found that Local 26 obtained valid authorization cards from a majority of employees and that Jiten must recognize Local 26 as the exclusive collective bargaining agent for the Courtyard's employees.

26. On April 30, 2008, South Bay notified Local 26 that it would recognize Local 26 pursuant to the Arbitrator's April 21, 2008 Opinion.

27. On May 18, 2008, the Agreement's three-year term expired.

### *The Union Demands Interest Arbitration*

28. In May 2008, South Bay and Local 26 began negotiations for an initial collective bargaining agreement. To date, the parties have not reached an agreement.

29. On July 23, 2008, Local 26's counsel Domenic Bozzotto, Esq. demanded interest arbitration via a letter to Arbitrator O'Brien.

30. On August 25, 2008, South Bay responded to Local 26's demand for interest arbitration contending that South Bay has no obligation to submit to interest arbitration because (a) the Agreement had expired; and (b) the BRA's requirement that Jiten enter into the Agreement with Local 26 constituted impermissible regulation preempted by the NLRA, and therefore, the Agreement is void.

31. Accordingly, there presently is a justiciable controversy between South Bay and Local 26 regarding the parties' obligations to submit to interest arbitration, and the matter is ripe for declaratory judgment by the Court on the claims and issues set forth in the following cause of actions.

## COUNT I

## DECLARATORY JUDGMENT DUE TO
## EXPIRATION OF THE AGREEMENT

32.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33.     The express terms of the Agreement provide that it shall be effective for three years following the full public opening of the Courtyard.

34.     The Courtyard opened to the public on May 18, 2005 and, therefore, the Agreement expired on May 18, 2008.

35.     Because the Agreement has expired, Plaintiff has no contractual obligation to submit to interest arbitration before Arbitrator O'Brien.

## COUNT II

## DECLARATORY JUDGMENT DUE TO
## NLRA PREEMPTION OF THE AGREEMENT

36.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 35 as if fully set forth herein.

37.     Plaintiff submitted a proposal to the BRA to obtain the approval necessary to build the Courtyard.

38.     To obtain the BRA's approval to build the Courtyard, the BRA required Plaintiff to enter into the Agreement with Defendant Local 26.

39.     The Agreement replaced the union representational procedures provided for in the NLRA.

40.     The BRA's requirement to enter into the Agreement is preempted by the NLRA, including preemption under 8(c) of the NLRA which states, "[t]he expressing of

any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or foresee or promise of benefit." 29 U.S.C. § 158(c). Accordingly, the BRA's requirement to enter into Agreement is preempted under 8(c) of the NLRA pursuant to Garmon preemption under San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), in that it purports to frustrate or prohibit conduct permitted and rights guaranteed to employers under the NLRA.

41.  The BRA's requirement to enter into the Agreement is also preempted under the NLRA pursuant to the Machinists preemption under International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976), in that it purports to regulate areas Congress intentionally left to be controlled by the free play of economic forces. Accordingly, the BRA's requirement that Plaintiff enter into the Agreement with Defendant Local 26 constitutes impermissible state and/or municipal local regulation preempted by the National Labor Relations Act.

42.  Where the Agreement violates National Labor Relations Act, it is illegal and void *ab initio*. Plaintiff, therefore, has no contractual obligation to submit to interest arbitration before Arbitrator O'Brien.

**WHEREFORE**, Plaintiff respectfully requests that the Court order the following relief:

1.  Declaratory judgment that the Memorandum of Agreement between the parties has expired; and, therefore Plaintiff has no obligation to submit to interest arbitration;

2.      Declaratory judgment that the Memorandum of Agreement between the parties is void because the Boston Redevelopment Authority's actions constitute impermissible interference with Plaintiff's rights pursuant to the National Labor Relations Act, 29 U.S.C. § 158, et. seq.;

3.      Declaratory judgment that the Memorandum of Agreement is void *ab initio*; and, therefore, Plaintiff has no obligation to submit to interest arbitration; and

4.      Such other relief as the Court may deem just and appropriate, including, but not limited to Plaintiff's costs and attorneys fees in prosecuting this matter.

Respectfully submitted,

SOUTH BAY BOSTON MANAGEMENT INC.

By its attorneys

_____
Gregory C. Keating (BBO #564523)
John D. Doran (BBO #638230)
Ronald S. Allen (BBO #662745)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA 02109
Tel: 617.378.6000
Fax 617.737-0052
gkeating@littler.com
jdoran@littler.com
rallen@littler.com

Dated: August 29, 2008

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon plaintiff by process server on August 29, 2008.

_____
Ronald S. Allen